IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DANYELL DRUMMOND, an individual,<br><br>Plaintiff,<br><br>v.<br><br>VERITAS FUNDING, LLC, a Utah limited liability company and JOHN DOES 1-10,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR CONTINUANCE OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br><br>Case No. 2:21-CV-423-TS-DBP<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Motion for Continuance of Temporary Restraining Order and Preliminary Injunction. For the reasons discussed below, the Court will deny the Motion.

I. BACKGROUND

Since 2006, Plaintiff DanYell Drummond has owned residential property in Sandy, Utah (the "Property"). Defendant Veritas Funding, LLC ("Veritas") is a mortgage lending, limited liability company based in Midvale, Utah. On June 11, 2018, Drummond obtained a FannieMae Homestyle Renovation Loan ("HomeStyle Loan") from Defendant to remodel the Property.

Drummond stopped making loan payments to Veritas in February 2020 claiming that Veritas' lending process "was fraught with continual material disclosure errors."[1] Drummond sent a Notice of Rescission to Veritas on May 13, 2020. On April 16, 2021, Veritas entered a

---

[1] Docket No. 16, at 2.

Notice of Default and Election to Sell the Property ("Default") and served the notice to Drummond. Drummond had until July 16, 2021 to cure the Default.

Drummond brought an action against Veritas on May 31, 2021 in the Third Judicial District Court, Salt Lake County, Utah. Drummond seeks: declaratory relief to rescind the Homestyle Loan under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635(a) and Regulation Z, 12 C.F.R. § 226.23; permanent injunctive relief to bar Veritas from foreclosing on the Property; and (3) damages for slander of title. Drummond filed a Verified Amended Complaint on June 21, 2021, including a fourth claim for quiet title.

On July 6, 2021, Drummond filed a motion requesting a temporary restraining order ("TRO") to prevent Veritas from foreclosing on the Property and from pursuing any further collection action on the Homestyle Loan. After a hearing held with both parties, the state court granted the TRO on July 8, 2021, which expired on August 16, 2021. On July 13, 2021, Veritas removed the case to federal court. On August 12, 2021, Drummond filed a motion for a continuance of the TRO and a preliminary injunction enjoining Veritas from taking further foreclosure and collection actions against her.

## II. DISCUSSION

To obtain a preliminary injunction or a temporary restraining order, Plaintiff must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.[2]

---

[2] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (citing *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003)); *see also Lundgrin*

"[A] preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."[3] Accordingly, "the right to relief must be clear and unequivocal."[4]

### A.  SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Drummond and Veritas disagree on whether Drummond's request for a preliminary injunction "alters the status quo" such as to warrant a heightened burden or "strong showing" of likelihood of success on the merits.[5] Because Drummond fails to meet the threshold requisite showing a substantial likelihood of success on the merits, the question of whether Drummond must satisfy a heightened burden is irrelevant.

The purpose of TILA is "to assure a meaningful disclosure of credit terms" and to "protect the consumer against inaccurate and unfair credit billing and credit card practices."[6] When a consumer is not provided the required statutory disclosures, he or she has the right to rescind the credit transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing material disclosures required under this

---

*v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980) (the same considerations apply to both preliminary injunctions and temporary restraining orders).

[3] *Gen. Motors Corp.*, 500 F.3d at 1226 (quoting *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)).

[4] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal.*, 321 F.3d at 1256).

[5] *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (three types of preliminary injunctions bear a heightened burden of showing a "strong" substantial likelihood of success on the merits: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits).

[6] 15 U.S.C. § 1601(a).

subchapter, whichever is later, by notifying the creditor . . . ."[7] If the required notice or material disclosures are not delivered, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property."[8] When an obligor exercises this right to rescind, the obligor is not liable for "any finance or other charge, and any security interest given by the obligor," however, if the creditor has delivered any property to the obligor "the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value."[9]

Drummond argues that she is likely to succeed on the merits of her TILA rescission claim for the HomeStyle Loan based on a combination of Veritas' errors in loans estimates, improper charges for an unrequested Standard Conventional Loan interest rate lock, and other fees including a HUD consultant fee, escrow fee, and draw fee.[10] Drummond also argues that she need not show an ability to repay Veritas the principal balance of approximately $370,500.

Veritas contests the alleged errors in material disclosure and argues that Drummond's claim fails because she cannot tender the principal balance.

Drummond exercised her right of rescission by providing a written Notice of Recission to Veritas on May 13, 2020, and commencing this action to enforce her right of rescission on May 31, 2021—both actions within the three-year limitation. The two issues the Court must address to determine if Drummond demonstrates a likelihood of success on the merits are: (1) whether

---

[7] *Id.* § 1635(a).

[8] *Id.* § 1635(f).

[9] *Id.* § 1635(b).

[10] Docket No. 16, at 18.

Drummond can establish Veritas' failure to make material disclosures required by TILA, and (2) whether Drummond must demonstrate an ability to tender the principal balance to Veritas.

     i.     Alleged Errors in Material Disclosures

TILA requires creditors to provide consumers with certain clear and accurate material disclosures.[11] Material disclosures are "required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)."[12]

In her motion, Drummond contends that Veritas failed to make material disclosures of the finance charge. She provides Veritas' admissions to the Federal Consumer Finance Protection Bureau ("CFPB") where Veritas admits:

> In October 2019, upon receiving information indicating that the 05/23/2018 CD [the First CD] was potentially not in good faith, the Veritas Funding legal department at the time completed a review of Mrs. Drummonds [sic] material disclosures for inaccuracies. After investigation of the evidence, legal determined that Mrs. Drummond was correct and was entitled to a refund of all HomeStyle Renovation fees in Section B. services the borrower did not shop for that were added on the 05/23 CD. This included a $500.00 draw fee, a $3,449.80 Escrow Rehab Fee, and the remaining $600.00 of the HUD consultant fee. On 10/16/2019, Veritas Funding issued a post-consummation CD [the Fifth CD] reflecting a tolerance cure for the fees listed above and a check in the amount of $4549.80.
> \* \* \* \*
> To the best of our knowledge, Mrs. Drummond has not cashed her tolerance cure check. Due to the trigger of this complaint on 06/30/2020, and Mrs. Drummond's insistence that her disclosures are still inaccurate, Veritas Funding management triggered a new review of Mrs. Drummond's disclosures with current compliance staff. The current Veritas Funding compliance department's analysis determined that the only item remaining that is inaccurate on Mrs. Drummond's disclosures was the discount point increase on 05/23/2018. This increase should have been

---

[11] *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1179 (10th Cir. 2012) (citation omitted).

[12] 12 C.F.R. § 226.23 n.48 (2007).

refunded to Mrs. Drummond on the 10/16/2019 post-consummation CD [the Fifth CD] and was not caught by the 2019 legal department review. Per TILA section 130(b), Veritas Funding issued a post-consummation CD [the Sixth CD] to Mrs. Drummond dated 08/06/2020 to cure the tolerance violation for the 0.375% increase in discount points. This PCCD was sent via FedEx overnight on 08/07/2020, along with a check for $1,428.50.[13]

Drummond argues these errors negatively affected the amount she was required to pay in interest on her HomeStyle Loan as an annual percentage rate. Here, Drummond provides persuasive evidence showing Veritas provided errors in material disclosures thereby impacting her interest payments.

ii.     Tender of Principal Balance

The next issue is whether Drummond must establish an ability to tender the principal balance of approximately $370,500 to Veritas. Generally, courts will not enforce a TILA rescission unless the obligor has shown an ability to tender the money or the property.[14] However, Drummond states that under *Sanders v. Mountain America Federal Credit Union*, "a rescinding consumer need not plead an ability to repay the proceeds of the loan."[15]

While it is true that a plaintiff seeking rescission need not plead an ability to repay to survive a motion to dismiss, Drummond takes the Tenth Circuit's quote out of context. In fact, the Tenth Circuit stated that "[a]lthough the rescinding consumer need not plead an ability to

---

[13] Docket No. 18 Ex. A, at 6–7.

[14] *See Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007) (noting that rescission will only be enforced if "the lender [is] assured of receiving its legal due") (quoting *Powers v. Sims & Levin*, 542 F.2d 1216, 1222 (4th Cir. 1976)); *Smith v. Argent Mortg. Co., LLC*, No. 05–cv–02364–REB–BNB, 2007 WL 4105192, at *4 (D. Colo. Nov.14, 2007) (concluding that "rescission of the transaction will be enforced judicially only if the borrower is able to return the proceeds of the loan, or some reasonable equivalent, to the lender"), *aff'd*, 331 F. App'x 549 (10th Cir. 2009).

[15] Docket No. 18, at 7.

repay the proceeds of the loan, the district court may nevertheless, in an appropriate case, use its equitable powers to protect a creditor's interests during the TILA rescission process."[16] In *Sanders*, the court explained that rescission initiated after the initial three-day period imposes an unfair risk on creditors by requiring them to release their security interest without assurance that the obligor will honor his or her own rescission obligations.[17] "This problem is particularly acute when the consumer resorts to TILA rescission because of an impending foreclosure or bankruptcy."[18] In such cases "courts routinely exercise their equitable powers to ensure consumers can honor their rescission obligations before requiring creditors to release their security interests."[19] Thus "[t]he courts, *at any time during the rescission process*, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act."[20] This process allows courts to restore the parties to the "status quo ante," which is the equitable goal of TILA rescission.[21]

In this case, Drummond seeks to enforce her TILA rescission right because of an impending foreclosure of the Property. It would be inequitable for Veritas to release its security interest without assurance that Drummond will repay the approximately $370,500 principal

---

[16] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1144 (10th Cir. 2012).

[17] *Id.* at 1142–43.

[18] *Id* at 1143; *see also Shelton*, 486 F.3d at 820–21.

[19] *Sanders*, 689 F.3d at 1143 (citing *Shelton*, 486 F.3d at 820–21; *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172–73, 1172 n.5 (9th Cir. 2003); *Williams v. Homestake Mortg.*, 968 F.2d 1137, 1142 (11th Cir. 1992)).

[20] *Williams*, 968 F.2d at 1141 (quoting S.Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 265).

[21] *See Yamamoto*, 329 F.3d at 1172.

balance. Additionally, while the defendant in *Sanders* never requested an order from the court altering the TILA rescission procedure, in this case Veritas requests that if an injunction is entered, the Court should alter the recission procedure and require Drummond to post bond for approximately $370,500.[22] Drummond has not alleged, let alone shown, she can tender this amount.

Based on this, equity requires Drummond to establish her ability to repay the HomeStyle Loan amount to show a substantial likelihood of success on the merits. Since she has not, the Court cannot find that Drummond satisfied her burden of showing a substantial likelihood of success on the merits and preliminary injunctive relief is not warranted.

B. IRREPARABLE HARM

Irreparable harm is an injury that "must be both certain and great, and that it must not be merely serious or substantial."[23] "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[24] Thus, "the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."[25] This typically involves the type of injury that cannot be remedied with money or when

---

[22] Docket No. 17, at 13–14.

[23] *Dominion Video Satellite, Inc.*, 356 F.3d at 1262 (internal citation and quotations omitted).

[24] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[25] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotations omitted).

a remedy cannot be fashioned following a determination on the merits.[26] "[S]imple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[27]

Drummond argues that absent injunctive relief, Veritas will begin foreclosure proceeds which will terminate her right to rescind and deprive her family of their home. Veritas argues that Drummond's five-week delay in filing motion for injunctive relief suggests a lack of immediacy necessary to make a proper showing of irreparable harm.

First, Drummond is correct in asserting that her right to rescind would terminate upon the sale of the Property, but only if the "sale occurred *before* the conclusion of the three-year limitation"[28] Under § 1635(f), "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."[29] Here, the HomeStyle loan closed on June 11, 2018, thus the three-year limitation ended on June 11, 2021. Because Drummond's right to rescission expired on June 11, 2021, she cannot demonstrate any further harm from a right that has already lapsed.

Second, the Court is sympathetic to the harm Drummond may suffer with the loss of her home especially since foreclosure actions have not yet commenced. Additionally, given natural delays presented by the COVID-19 pandemic as well as Drummond's unforeseen military

---

[26] *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

[27] *Heideman*, 348 F.3d at 1189.

[28] *Rosenfield v. HSBC Bank, USA*, No. 10-cv-00058-MSK-MEH, 2010 WL 2163787, at *5 (D. Colo. May 26, 2010).

[29] 15 U.S.C. § 1635(f).

obligations, the Court disagrees with Veritas' claim that Drummond's five-week delay in filing the Motion suggests a lack of immediacy and irreparable harm.

Nevertheless, considering that any harm in losing the Property may be compensated through money damages, the Court is not entirely convinced that Drummond's stated harm is irreparable. While the Court recognizes that it is possible for Drummond to suffer irreparable harm from the loss of the Property, a mere possibility of irreparable harm is insufficient to show that Drummond's right to relief is clear and unequivocal.

### C.  BALANCE OF HARDSHIPS

The Court must balance the hardships to the Defendant with the Plaintiff's injury to determine whether to issue an injunction.[30] Drummond argues that as a mortgage lender and large company, Veritas experiences no harm that could outweigh the potential loss of her home. Veritas argues that in addition to costs associated with the interest late fees, it faces the possibility of Drummond rescinding the HomeStyle Loan without any assurance that she can tender payment of the principal balance. Veritas further claims that Drummond has ceased making payments since February 2020 with her debt exceeding $370,500 despite stating that she had the financial ability to make monthly payments on the loan, but intentionally failed to do so.[31]

The Court is not convinced that Drummond's stated harm outweighs Veritas' harm in losing its security interest. The scale weighs in favor of Veritas. Drummond fails to demonstrate

---

[30] *See Prairie Band of Potawatomi Indians*, 253 F.3d at 1250.

[31] Docket No. 17, at 12.

that the balance of hardships weighs in her favor given her refusal to make payments toward her sizeable debt.

### D. PUBLIC INTEREST

Before granting an injunction, courts must "weigh the case-specific equities in favor of both parties and the public interest."[32] The Court agrees that there is a strong public interest in preventing Drummond from losing her home based on alleged material errors in Veritas' loan agreements. The Court also recognizes, however, that Drummond intentionally failed to made loan payments to Veritas since February 2020 despite admitting that she had the financial ability to do so. There are public interest concerns on both sides. However, remembering that the purpose of § 1635(b) is "to restore the parties as much as possible to the status quo ante,"[33] it would be against public interest for Drummond to fail to repay Veritas for the money it already loaned her. The Court cannot conclude that the public interests weigh in Drummond's favor to warrant a preliminary injunction.

Even if Drummond had established a substantial likelihood of success on the merits, the remaining factors weigh against granting a preliminary injunction. For these reasons, the Court cannot conclude that the remaining factors make up for Drummond's failure to show a substantial likelihood of success on the merits.

---

[32] *Sanders*, 689 F.3d at 1144 (citations omitted).
[33] *Abbott v. Shaffer*, 564 F. Supp. 1200, 1208 (D. Utah 1983).

### III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Continuance of Temporary Restraining Order and Preliminary Injunction (Docket No. 16) is DENIED.

DATED this 21st day of September, 2021.

BY THE COURT:

_____
Ted Stewart
United States District Judge