IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DANYELL DRUMMOND,<br><br>Plaintiff,<br><br>v.<br><br>VERITAS FUNDING, LLC, a Utah limited liability company; PREMIER SOUTHERN PROPERTIES, LLC, a Utah limited liability company; and JOHN DOES 1-10,-<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S PROPOSED EXPERT<br><br>Case No. 2:21-CV-00423-TS-JCB<br><br>District Judge Ted Stewart |

This matter is before the Court on (1) Plaintiff DanYell Drummond's Motion for Partial Summary Judgment; (2) Defendant Veritas Funding's Motion for Summary Judgment; and (3) Defendant's Motion to Exclude Plaintiff's Proposed Expert. For the reasons discussed below, the Court denies Plaintiff's Motion for Partial Summary Judgment; grants in part and denies in part Defendant's Motion for Summary Judgment; and grants in part Defendant's Motion to Exclude Plaintiff's Proposed Expert.

I. BACKGROUND

This case involves claims under the federal Truth in Lending Act ("TILA") regarding alleged errors in a loan arranged between Plaintiff and Defendant, as well as claims of slander of title, quiet title, and wrongful foreclosure.[1]

Beginning in 2006, Plaintiff owned residential property in Sandy, Utah (the "Property"). Defendant Veritas Funding, LLC is a mortgage lending company based in Midvale, Utah. On

---

[1] Docket No. 48.

June 11, 2018, Plaintiff obtained a Fannie Mae Homestyle Renovation Loan for $370,500.00 from Defendant to remodel the Property. To fund the loan, Plaintiff executed a deed of trust.

Plaintiff stopped making loan payments to Veritas in February 2020, claiming that Defendant's lending process "was fraught with continual material disclosure errors."[2] Plaintiff sent a Notice of Rescission to Defendant on May 13, 2020. The Notice was recorded with the Salt Lake County Recorder's Office on June 18, 2020. On April 16, 2021, Defendant entered a Notice of Default and Election to Sell the Property ("Default") and served the notice to Plaintiff. Plaintiff had until July 16, 2021, to cure the Default.

Plaintiff brought this action on May 31, 2021, in the Third Judicial District Court, Salt Lake County, Utah, and it was subsequently removed to this Court on July 13, 2021.[3] Plaintiff recorded a Lis Pendens on the Property with the County Recorder on October 4, 2021, which was also filed with the Court.[4]

On September 22, 2023, Plaintiff filed a Motion for Summary Judgment on the grounds that her Notice of Rescission is valid and proper due to Defendant's material disclosure errors in violation of the TILA, and Defendant's subsequent foreclosure of Plaintiff's home was therefore unlawful.[5] Defendant responded on October 20, 2023.[6] On November 13, 2023, Plaintiff filed a reply in support of her Motion.[7]

---

[2] Docket No. 16, at 2.
[3] Docket No. 2.
[4] Docket No. 21.
[5] Docket No. 62.
[6] Docket No. 74.
[7] Docket No. 78.

On September 22, 2023, Defendant filed a Motion for Summary Judgment on the grounds that (1) Plaintiff's TILA rescission claim fails as a matter of law because she did not and cannot tender the loan principal; (2) Plaintiff's damages claims related to TILA violations, including actual damages, statutory damages, attorney fees, and finance charges are time barred; and (3) Plaintiff's claim for wrongful foreclosure is not supported by evidence of fraud in the foreclosure proceedings.[8] Plaintiff responded on October 20, 2023.[9] On November 13, 2023, Defendant filed a reply in support of its Motion.[10]

Plaintiff served Defendant with Nelson A. Locke, Esq.'s Expert Witness Report ("Report") on December 2, 2022.[11] Defendant Veritas filed a Motion to Exclude Plaintiff's Proposed Expert on September 22, 2023.[12] Defendant's Motion seeks to exclude Nelson A. Locke's testimony in its entirety.[13]

## II. DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence

---

[8] Docket No. 63, at 1–3.
[9] Docket No. 73.
[10] Docket No. 79.
[11] Docket No. 36.
[12] Docket No. 64.
[13] *Id.* at 5.
[14] Fed. R. Civ. P. 56(a).

presented.[15] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[16]

A.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff moves for summary judgment finding as a matter of law that, because of Defendant's alleged material disclosure errors in violation of TILA, she properly rescinded the loan provided by Defendant, and therefore Defendant's subsequent foreclosure was unlawful. Ordinarily, whether disclosures under TILA are inaccurate, misleading, or confusing is a question of fact for the factfinder.[17] Where, however, "the confusing, misleading, and inaccurate character of the disputed disclosure is so clear that it cannot reasonably be disputed, summary judgment for the plaintiff is appropriate."[18] Here, the disputed disclosures are not so clearly confusing, misleading, and inaccurate that summary judgment is appropriate for Plaintiff.[19] The Court then turns to the validity of the rescission process.

While it is true that Defendant failed to follow the 15 U.S.C. § 1635(b) requirements following Plaintiff's Notice of Rescission, Plaintiff's summary judgment argument fails because something more than notice of rescission is required for the rescission to be complete. "[A] majority of circuit courts have held 'that unilateral notification of cancellation does not

---

[15] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[16] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[17] *Griggs v. Provident Consumer Disc. Co.*, 503 F. Supp. 246, 250 (E.D. Pa. 1980).

[18] *Id.* (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978); *see also Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 209 (D. Conn. 2001).

[19] The parties disagree on most of the key facts regarding the existence and materiality of disclosure errors. *See* Docket No. 70, at 7–17; Docket No. 73, at 2–8.

4

automatically void the loan contract.'"[20] For example, the Fourth Circuit held that a creditor's failure to comply with its TILA requirements following the notice of rescission did not mean the debtor could avoid tendering loan proceeds as part of the valid rescission process.[21] The Tenth Circuit has agreed with this majority approach where "the consumer provides notice of an intent to rescind outside of TILA's three-day period."[22]

Here, Plaintiff sent a notice of rescission outside the three-day period,[23] and none of the other required steps in 15 U.S.C. § 1635(b) have been completed. Because Plaintiff's Notice of Rescission was not enough alone to make the rescission complete, the Court denies Plaintiff's Motion.

B.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Fundamental TILA Rescission and Damages Claims*

Defendant argues that Plaintiff's TILA rescission claim fails as a matter of law because "[t]he evidence . . . demonstrates Plaintiff had no ability to tender funds at the time of her notice of rescission."[24] In its Reply supporting summary judgment, Defendant objects to evidence provided in Plaintiff's Response memorandum that contradicts this assertion and demonstrates that Plaintiff did have an ability to tender funds at the time of her notice of rescission.[25]

---

[20] *Sanders v. Mountain Am. Credit Union*, 621 F. App'x. 520, 525 (10th Cir. 2015) (quoting *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007)).

[21] *Lavis v. Reverse Mortg. Sols., Inc.*, 40 F.4th 181, 187 (4th Cir. 2022) (holding that the statutory "language is more focused on the timing of when tender occurs rather than whether it occurs at all. It certainly does not expressly state that a lender must return any money it received from the borrower as well as terminate a security interest and that the borrower does not have to return the loan proceeds.").

[22] *Sanders*, 621 F. App'x at 525.

[23] Docket No. 62 ¶ 85.

[24] Docket No. 63, at 7–8, 13.

[25] Docket No. 79, at 3.

5

However, the Court need not address Defendant's evidentiary objections at this time because, regardless of the admissibility of the Plaintiff's evidence, the related portion of Defendant's summary judgment motion fails.

TILA rescission requires that, "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."[26] Only then will the obligor be required to tender the property or its reasonable value to the creditor.[27]

Neither party disputes that Plaintiff sent a Notice of Rescission to Defendant on May 13, 2020, and Defendant confirmed receipt of the Notice of Rescission on that same day.[28] Following the receipt of the Notice of Rescission, Defendant did not return to Plaintiff any money or property, nor did it take any action to terminate the security interest. Despite its failure to comply with the statutory requirement in 15 U.S.C. § 1635(b), Defendant argues that "[b]ecause the evidence shows Plaintiff is unable to tender the loan proceeds, her TILA rescission claim [] must be dismissed."[29] Plaintiff disputes that the evidence shows she is unable to tender the loan proceeds.[30]

---

[26] 15 U.S.C. § 1635(b); *see also* 12 C.F.R. § 226.23(d)(2).

[27] 15 U.S.C. § 1635(b); *see also* 12 C.F.R. § 226.23(d)(3).

[28] Docket No. 62 ¶¶ 85–86; *see also* Docket No. 74, at 14 (Defendant disputes that Plaintiff's Notice of Rescission satisfied legal requirements but does not appear to dispute receipt of the Notice).

[29] Docket No. 63, at 14.

[30] Docket No. 73, at 27–29.

Defendant cannot require Plaintiff to prove her ability to tender the loan proceeds without first petitioning the Court for an equitable reordering of the TILA rescission process.[31] In reversing a case where a district court found that the debtor was required to plead an ability to repay the proceeds of the loan, the Tenth Circuit held that "we must adhere to the procedure duly enacted by Congress and the responsible administrative agency except when the equities of a particular case require otherwise."[32] The Tenth Circuit also noted that "the district court may nevertheless, in an appropriate case, use its equitable powers to protect a creditor's interests during the TILA rescission process."[33] However, this use of a court's equitable powers is only appropriate where the creditor first requests "an order from the court altering the TILA rescission procedure."[34]

Here, Defendant has made no motion requesting that the Court alter the TILA rescission procedure. Therefore, summary judgment in favor of Defendant due to Plaintiff's alleged inability to tender the loan proceeds is inappropriate and will be denied. Defendant did argue, in response to Plaintiff's motion for preliminary injunction, that the Court should require Plaintiff to provide security in the event the Court ordered injunctive relief.[35] However, the Court denied Plaintiff's request for an injunction, and Defendant made no further efforts to obtain such

---

[31] 12 C.F.R. § 226.23(d)(4); *see also Sanders*, 621 F. App'x. at 524–26 (10th Cir. 2015) (upholding district court's finding that "the equities favored reordering TILA's rescission procedure.").

[32] *Sanders v. Mountain Am. Credit Union*, 689 F.3d 1138, 1144 (10th Cir. 2012).

[33] *Id.*; *see also Brown v. Nat'l Permanent Fed. Sav. & Loan Ass'n*, 683 F.2d 444, 449 (D.C. Cir. 1982) ("Under the Truth-in-Lending Act, the right of rescission is granted by statute but application of the remedy is governed by equitable principles.").

[34] *Sanders*, 689 F.3d at 1144; *see also* 12 C.F.R. § 226.23(d)(4) ("The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.").

[35] Docket No. 17, at 2. The Court noted that Plaintiff had not shown an ability to tender the loan proceeds and cited that as one of the reasons to deny her request for an injunction, but the Court did not reorder the rescission procedure.

security. Because there has been no order from the Court altering the TILA rescission procedure, Plaintiff's obligation to tender the loan proceeds is not ripe, and her alleged inability to tender funds at the time of the notice of rescission cannot support summary judgment in Defendant's favor.

Defendant also argues that Plaintiff's rescission and damages claims are barred by their respective statutes of limitations. TILA provides that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."[36] The transaction at issue here was consummated on June 11, 2018.[37] Plaintiff sent a Notice of Rescission to Defendant on May 13, 2020, and Defendant confirmed receipt of the Notice of Rescission on that same day.[38] Plaintiff's Notice of Rescission was timely sent within the three-year statute of limitations, and thus her subsequent suit based on TILA rescission is not barred. Accordingly, the Court denies summary judgment for Defendant on Plaintiff's rescission claim.

TILA also provides that an action for damages must be brought within "one year from the date of the occurrence of the violation."[39] Generally, "the one year limitation period begins to run, 'when credit is extended through the consummation of the transaction between the creditor and its customer without the required disclosures being made.'"[40]

---

[36] 15 U.S.C. § 1635(f).

[37] Docket No. 62 ¶ 45; Docket No. 74 ¶¶ 4–6.

[38] Docket No. 62 ¶¶ 85–86; *see also* Docket No. 74, at 14.

[39] 15 U.S.C. § 1640(e).

[40] *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1257–58 (D. Colo. 2004) (quoting *Dryden v. Lou Budke's Arrow Fin. Co.*, 630 F.2d 641, 646 (8th Cir. 1980)).

Defendant argues that any TILA violations would have occurred at the consummation on June 11, 2018, three years before Plaintiff brought the action.[41] Plaintiff argues that Defendant's Sixth Closing Disclosure and the accompanying tolerance cure check were provided on August 6, 2020, and, because these documents were a "culmination of the previous incorrect disclosures," Plaintiff timely filed the damages claims in her May 31, 2021, suit.[42]

Courts, including the Tenth Circuit, have rejected the continuing violation theory argued by Plaintiff.[43] Plaintiff filed her suit on May 31, 2021, almost three years after the June 11, 2018, consummation of the loan agreement between her and Defendant.[44] Plaintiff received the disclosures she alleges contained material errors beginning as early as March 7, 2018.[45] Because Plaintiff's suit came nearly three years after the alleged violations and the consummation of the loan agreement, her damages claim is barred by the statute of limitations contained in 15 U.S.C. § 1640(e).

Plaintiff points to *Littlefield v. Walt Flanagan & Co.*,[46] in which the Tenth Circuit allowed a suit filed beyond the one-year statute of limitations because the defendant ignored its duties following the notice of rescission by the debtor.[47] The *Littlefield* court discussed TILA's purpose in preventing "unscrupulous and predatory creditor practices" and that it "must be

---

[41] Docket No. 63, at 2.

[42] Docket No. 73, at 35.

[43] *Stevens v. Rock Springs Nat'l Bank*, 497 F.2d 307, 309 (10th Cir. 1974) ("[W]e nevertheless agree generally with the proposition that violation of the disclosure requirements . . . occurs at a specific time from which the statute will then run . . . . Thus it does not necessarily become a continuing failure or breach.").

[44] Docket No. 73 ¶ 121.

[45] Docket No. 73-7 ¶ 12.

[46] 498 F.2d 1133 (10th Cir. 1974).

[47] *Id.* at 1135–36.

liberally construed to effectuate the intent of Congress."[48] The court's decision in *Littlefield* did not bar the 15 U.S.C. § 1635 rescission claim based on the one-year statute of limitations contained in 15 U.S.C. § 1640(e), but it did hold that the Plaintiff's § 1640(e) damages claim was barred "because the action was brought more than one year after the consummation of the transaction."[49] Here, Plaintiff's rescission claim is not barred, as described above, but her damages claim was filed more than one year after the alleged violations and the consummation of the sale and is therefore time barred.

Plaintiff also argues that her claims are subject to equitable tolling.[50] However, "equitable tolling is available for a TILA claim [only] when a plaintiff shows that [s]he diligently pursued [her] rights, but extraordinary circumstances prevented [her] from timely filing [her] claim."[51] Plaintiff has made no such showing. Plaintiff has been aware of the alleged disclosure errors since at least March 7, 2018, at the time of the first disclosure.[52]

Because the statute of limitations contained in 15 U.S.C. §1640(e) applies to Plaintiff's damages claim and Plaintiff filed her damages claim three years after the alleged violations and consummation of the sale, the Court grants summary judgment for Defendant on Plaintiff's damages claim.

*Wrongful Foreclosure*

---

[48] *Id.* at 1136 (internal quotation marks and citation omitted).

[49] *Id*. (discussing *Stevens*, 497 F.2d 307).

[50] Docket No. 73-7 ¶ 12.

[51] *Schonebaum v. Shellpoint Mortg. Servicing*, No. 14-CV-03093-REB-KLM, 2016 WL 1104875, at *9 (D. Colo. Feb. 29, 2016) (citations omitted); *see also Heil v. Wells Fargo Bank, N.A.*, 298 F. App'x 703, 706–07 (10th Cir. 2008); *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007).

[52] Docket No. 73-7 ¶ 12.

Defendant moves for summary judgment dismissing Plaintiff's wrongful foreclosure claim.[53] Defendant argues that Plaintiff has not shown any facts supporting that there was some "attendant fraud or unfair dealing" in the sale itself, and the Court's order denying a temporary restraining order to stop the foreclosure proceedings indicates that Plaintiff's wrongful foreclosure claim fails.[54] Plaintiff counters, arguing that Defendant's summary judgment motion fails because Defendant was aware of both the alleged material disclosure errors and the timely rescission of the loan prior to the foreclosure proceedings.[55]

Defendant's knowledge of the initiation of the timely rescission process and its failure to comply with the requirements of TILA after receiving notice of rescission indicates a genuine a dispute of material fact as to the existence of unfair dealing in the foreclosure sale process. If the Plaintiff timely rescinded the loan from Defendant, the trust deed executed through the foreclosure sale becomes void.[56] Plaintiff has plausibly alleged that her interests were sacrificed based on Defendant's improper foreclosure of the Property.[57] Defendant is not entitled to summary judgment on the wrongful foreclosure claim based on the Court's earlier order denying a continued stay of foreclosure.[58] While the Court denied Plaintiff's request for continued injunctive relief, the merits of her claim remain to be determined.

---

[53] Docket No. 63, at 2–3.

[54] *Id.* at 17–19.

[55] Docket No. 3, at 38–39.

[56] *Utah First Fed. Credit Union v. Dudley*, 2012 UT App 164, ¶ 9, 280 P.3d 462 (concluding that the Truth in Lending Act contemplates a valid rescission before a security interest becomes void); *see also* 15 U.S.C. § 1635.

[57] *Concepts, Inc. v. First Sec. Realty Servs., Inc.*, 743 P.2d 1158, 1160 (Utah 1987) ("A sale once made will not be set aside unless the interests of the debtor were sacrificed or there was some attendant fraud or unfair dealing.").

[58] *See* Docket No. 20.

Therefore, the Court denies summary judgment for Defendant on the wrongful foreclosure claim.

C.     DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S PROPOSED EXPERT

Federal Rule of Evidence 702 allows an expert to testify if the proponent has demonstrated by a preponderance of the evidence that:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[59]

Although the standard under Rule 702 is "liberal . . . regarding expert qualifications,"[60] "[t]he proponent of expert testimony bears the burden of showing that the testimony is admissible."[61]

Rule 702 "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions."[62] This involves a two-step analysis.[63] The district court "must first determine whether the expert is qualified 'by knowledge, skill, experience, training,

---

[59] FED. R. EVID. 702.

[60] *Fowers Fruit Ranch, LLC v. Bio Tech Nutrients, LLC*, No. 2:11-CV-105-TC, 2015 WL 2201715, at *1 (D. Utah May 11, 2015) (quoting *United States v. Gomez,* 67 F.3d 1515, 1526 (10th Cir. 1995)).

[61] *Id.* (quoting *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013)) (alteration in original).

[62] *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (quoting *Ralston v. Smith & Nephew Richards Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)); *see generally Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).

[63] *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

or education' to render an opinion."[64] "Preliminary questions concerning the qualification of a person to be a witness . . . should be established by a preponderance of proof."[65] Second, "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[66]

"Under Rule 702, a district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."[67] However, "[a]t the Rule 702 gatekeeping stage, district courts must avoid weighing the credibility or persuasiveness of the competing experts' ultimate conclusions."[68]

Defendant's Motion primarily addresses part (a) of Rule 702 regarding qualifications of expert witnesses,[69] and it does not challenge the qualifications of Mr. Locke. Defendant argues that (1) "Mr. Locke's expert opinions are the type of impermissible legal analysis that attempt to usurp the role of the judge and jury[;]"[70] and (2) "Mr. Locke's opinions exceed their scope by improperly attempting to instruct the Court that Plaintiff had suffered various damages."[71]

Plaintiff counters that "Mr. Locke is duly qualified as an expert and his testimony is relevant and reliable,"[72] and asks the Court to deny the Motion.

---

[64] *Id.* (quoting FED. R. EVID. 702).

[65] *Daubert*, 509 U.S. at 592 n.10.

[66] *Nacchio,* 555 F.3d at 1241 (citing *United States v. Rodriguez–Felix,* 450 F. 3d 1117, 1123 (10th Cir. 2006)).

[67] *Rodriguez–Felix,* 450 F. 3d at 1122–23 (citing FED. R. EVID. 702).

[68] *Heer v. Costco Wholesale Corp.*, 589 F. App'x. 854, 862 (10th Cir. 2014) (citation omitted).

[69] FED. R. EVID. 702(a) ("the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . .").

[70] Docket No. 64, at 7.

[71] *Id.* at 9.

[72] Docket No. 68, at 1.

While Rule 702 allows expert testimony to "help the trier of fact to understand the evidence or to determine a fact in issue,"[73] the Court must consider "whether the expert [will] encroach[] upon the trial court's authority to instruct the jury on the applicable law."[74] In helping the trier of fact understand the issues, "[a]n expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion."[75]

Under Fed. R. Evid. 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, the comments to Rule 704 "emphasize that testimony on ultimate questions of law is not favored."[76] "[Other] courts have decried the latter kind of testimony as directing a verdict, rather than assisting the jury's understanding and weighing of the evidence."[77]

The Tenth Circuit has emphasized that there is a "clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury."[78] "The line between a permissible opinion on an ultimate issue and

---

[73] FED. R. EVID. 702(a).

[74] *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988).

[75] *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008) (internal quotation marks and citations omitted).

[76] *Specht*, 853 F.2d at 808; *see* FED. R. EVID. 704 1972 advisory committee's notes ("The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. . . . [Other provisions in the Federal Rules of Evidence] afford ample assurances against the admission of opinions which would merely tell the jury what to reach, [including FED. R. EVID. 701, 702, and 403].").

[77] *Specht*, 853 F.2d at 808; *see Klein v. Heideman*, 574 F. Supp. 3d 1006, 1012 (D. Utah 2021) (excluding the expert from testifying because "[h]is expert opinions [were] nothing more than legal analysis aimed at instructing on the law, how the facts and evidence should be applied to the law, and how the case should ultimately be decided").

[78] *Specht*, 853 F.2d at 808.

an impermissible legal conclusion is not always easy to discern."[79] However, it is generally accepted that "an expert may not state legal conclusions drawn by applying the law to the facts."[80]

The court concluded in *Specht* that an expert attorney "was improperly allowed to instruct the jury on how it should decide [a] case" involving an allegedly unlawful search of the plaintiffs' home and office when his testimony "developed . . . the conclusion that defendants violated plaintiffs' constitutional rights."[81] "After testimony had been presented by the plaintiffs to establish the underlying facts," the expert gave testimony about whether "he believed that a search took place in the plaintiffs' home and business."[82] In reaching his conclusion, the expert "told the jury that warrantless searches are unlawful, that defendants committed a warrantless search on plaintiffs' property, and that the only applicable exception to the warrant requirement, search by consent, should not vindicate the defendants because no authorized person voluntarily consented to allow a search of the premises."[83] Thus, the Tenth Circuit held that "the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence" by allowing the expert to give testimony of this "array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof."[84]

---

[79] *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (citing *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)).

[80] *A.E. ex rel Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) (citations omitted); *see also United States v. Vreeken*, 803 F.2d 1085, 1091 (10th Cir. 1986) ("[Q]uestions of law are the subject of the court's instructions and not the subject of expert testimony.") (citations omitted).

[81] *Specht*, 853 F.2d at 808.

[82] *Id.* at 806.

[83] *Id.* at 808.

[84] *Id.*

15

Here, the expert testimony at issue is like that of the expert in *Specht*. Mr. Locke, who is also an attorney, reviewed the Plaintiff's Complaint, Defendant's Answer, documents produced by the parties, and the origination and processing of Plaintiff's Homestyle residential mortgage loan by Defendants in preparation to give his testimony.[85] In the expert report, Mr. Locke lists the following under the "Scope of the Assignment": "[e]valuate Defendant's handling of the [P]laintiff's Homestyle Loan; [e]valuate Rescission and effect on Foreclosure; [c]onsider Violations of TILA, [the Real Estate Settlement Procedures Act ("RESPA")], and [Unfair, Deceptive, or Abusive Acts or Practices ("UDAAP")]; [c]onsider other civil torts I may see present in this file."[86] Mr. Locke then gave legal opinions on each of those points.[87]

Defendant points to several instances in the expert report where Mr. Locke provides legal conclusions for the alleged facts in the case.[88] For example, Defendant argues that Mr. Locke's statements regarding TILA rescission read like a legal opinion. Mr. Locke cites the relevant statute and Supreme Court caselaw and then concludes with his opinion that "Plaintiff complied with both the timing and the form of notice requirements and that all of Plaintiff's funds should have been immediately returned."[89] It is Plaintiff's burden to prove the elements required for a proper TILA rescission. Admission of Mr. Locke's "array of legal conclusions touching upon nearly every element of the [Plaintiff's] burden of proof" would allow Mr. Locke "to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence"[90]

---

[85] Docket No. 64-1, at 4.

[86] *Id.* at 7.

[87] *Id.* at 7–9.

[88] Docket No. 64, at 3–5, 7–9.

[89] *Id.* at 8.

[90] *Specht*, 853 F.2d at 808.

The Court grants in part Defendant's Motion to Exclude Plaintiff's Proposed Expert. Testimony offering legal conclusions about the elements of the case Plaintiff is required to prove at trial is excluded. However, to the extent that Mr. Locke's expert testimony provides helpful information to the jury regarding the process of obtaining a Homestyle Loan, or otherwise provides context for the mortgage process and other fact issues based on his expertise, it is not excluded.

### III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 62) is DENIED. It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 63) is GRANTED IN PART AND DENIED IN PART as set forth above. It is further

ORDERED that Defendant's Motion to Exclude Plaintiff's Proposed Expert (Docket No. 64) is GRANTED IN PART as set forth above.

The Court will refer this matter to a Magistrate Judge to conduct a settlement conference.

DATED this 7th day of February, 2024.

BY THE COURT:

_____
Ted Stewart
United States District Judge